IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF ADJUSTABLE RATE MORTGAGE TRUST 2007-2 ADJUSTABLE RATE MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-2, | ) ) ) ) ) ) ) ) ) ) | No. 35791-1-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| ANGELA UKPOMA, | ) ) | PUBLISHED OPINION |
| Appellant, | ) ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, FINANCIAL SERVICES ADMINISTRATION; BOEING EMPLOYEES CREDIT UNION; KUBESH'S SITE MIXED CONCRETE, INC.; CARRIE SURIANO; COLVILLE VALLEY CONCRETE CORPORATION; RAMPART MMW; NORSTAR HEATING & COOLING; ISLAND PROPERTY INVESTMENTS; UNKNOWN OCCUPANTS OF THE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

No. 35791-1-III
*U.S. Bank Nat'l Ass'n v. Ukpoma*


SUBJECT REAL PROPERTY; ALL    )
OTHER UNKNOWN PERSONS OR    )
PARTIES CLAIMING ANY RIGHT,    )
TITLE, ESTATE, LIEN, OR INTEREST    )
IN THE REAL ESTATE DESCRIBED IN    )
THE COMPLAINT HEREIN,    )
    )
               Defendants.    )

LAWRENCE-BERREY, C.J. — Angela Ukpoma defaulted on her home installment loan. U.S. Bank National Association's (U.S. Bank's) agent sent Ms. Ukpoma a notice that her loan balance was accelerated and the entire amount was immediately due and payable. The notice contradictorily stated she could reinstate the loan if she paid the delinquent payments plus various charges 11 or more days before an unscheduled trustee's sale. No such sale ever occurred. For various reasons, U.S. Bank did not bring this judicial foreclosure action until more than eight years after its agent sent its notice.

We are asked to decide whether the agent's notice was sufficiently clear and unequivocal so as to constitute an acceleration of the installment loan. A majority of this panel concludes that the agent's notice was unclear and did not accelerate the loan.

We also discuss whether initiating a nonjudicial foreclosure tolls the statute of limitations for commencing a judicial foreclosure action. This author believes there is no tolling but a majority of this panel believes otherwise. We publish this opinion to encourage further debate of this important issue.

2

We unanimously conclude that U.S. Bank can judicially foreclose its deed of trust, and we affirm the trial court.

FACTS

In December 2006, Angela Ukpoma executed a promissory note for the purchase of her home. The note, secured by a deed of trust, required her to pay monthly installments for 30 years. U.S. Bank is the note holder and assignee of the deed of trust.

Ms. Ukpoma failed to make a scheduled payment on October 1, 2007, and has failed to make any further payments. On or about February 1, 2008, Quality Loan Service Corporation (QLS) sent Ms. Ukpoma a notice of default. The notice provides in relevant part:

> You are hereby notified that [U.S. Bank] has elected to accelerate the loan described herein, and has declared the entire balance of $252,000.00, plus accrued costs, immediately due and payable. NOTWITHSTANDING SAID ACCELERATION, YOU HAVE THE RIGHT TO REINSTATE THE LOAN BY PAYING THE DELINQUENT PAYMENTS, LATE CHARGES, COSTS AND FEES ON OR BEFORE THE ELEVENTH (11TH) DAY BEFORE THE DATE OF THE TRUSTEE'S SALE . . . .[1]

---

[1] By statute, the borrower has a right to reinstate the loan by paying the delinquent payments, late charges, costs, and fees at any time 11 days or more before the trustee's sale. *See* part V of the statutory form for "Notice of Trustee's Sale" contained in RCW 61.24.040(2)(d); *see also* part V of the form in former RCW 61.24.040(1)(f) (2008).

Clerk's Papers (CP) at 307. In the notice, QLS identified itself as "Agent for U.S. Bank . . . , the Beneficiary." CP at 307.

QLS did not initiate a trustee's sale until its notice of trustee's sale dated November 7, 2008. The notice set forth the delinquent balance. The cure amount showed that the loan had not been accelerated. QLS discontinued the first sale.

QLS subsequently initiated and discontinued multiple other trustee's sales. The initiation dates are June 18, 2009, February 23, 2010, May 14, 2010, June 11, 2010, August 22, 2011, and March 13, 2014. Similar to the initial notice of trustee's sale, these notices set forth the delinquent balance and cure amounts. All of the notices showed that the loan had not been accelerated.

Ms. Ukpoma also filed for bankruptcy protection in 2008 and again in late 2010. The bankruptcy stays shielded Ms. Ukpoma's property for approximately one year.

On May 13, 2016, U.S. Bank filed the present action to judicially foreclosure its deed of trust. U.S. Bank moved for summary judgment. Ms. Ukpoma responded that the February 1, 2008 default notice accelerated the installment loan so that the action was barred by RCW 4.16.040, the six-year statute of limitations.

The trial court concluded that QLS's notice was ineffective to accelerate the installment loan. It alternatively concluded that the statute of limitations had not run because the bankruptcies combined with the nonjudicial foreclosures sufficiently tolled the statute. Given these conclusions, the trial court granted U.S. Bank's motion for summary judgment.

Ms. Ukpoma appeals.

## ANALYSIS

### A.     DE NOVO REVIEW OF SUMMARY JUDGMENT

We review summary judgment rulings de novo and engage in the same inquiry as the trial court. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). A motion for summary judgment is properly granted where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012) (quoting *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

### B.     THE FORECLOSURE ACTION WAS PROPER BECAUSE SOME INSTALLMENT PAYMENTS REMAINED DUE AND CONTINUED TO ACCRUE

RCW 4.16.040(1) provides that an "action upon a contract in writing, or liability express or implied arising out of a written agreement" shall be commenced within six

years. This provision governs the statute of limitations for actions on promissory notes and deeds of trust. *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 784-85, 239 P.3d 1109 (2010). For an installment note, "'the statute of limitations runs against each installment from the time it becomes due.'" *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 434, 382 P.3d 1 (2016) (quoting *Herzog v. Herzog*, 23 Wn.2d 382, 388, 161 P.2d 142 (1945)).

However, if the installment note is accelerated, "the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due." *4518 S. 256th*, 195 Wn. App. at 434-35. Ms. Ukpoma argues that QLS's February 2008 notice accelerated the installment note. We disagree.

Acceleration of an installment note must be made in a clear and unequivocal manner that effectively apprises the maker that the holder has exercised his right to accelerate the installment debt. *Weinberg v. Naher*, 51 Wash. 591, 594, 99 P. 736 (1909); *4518 S. 256th*, 195 Wn. App. at 435; *Glassmaker v. Ricard*, 23 Wn. App. 35, 38, 593 P.2d 179 (1979). The question before us is whether to construe the February 2008 notice as a clear and unequivocal acceleration of the installment note. We decline to do so.

The February 2008 notice was unclear. It declared the full amount immediately due and payable. But it then contradicted itself by advising Ms. Ukpoma that she could

reinstate the loan by paying the delinquent payments plus various charges 11 or more days before an unscheduled trustee's sale. Nine months later, when QLS first initiated the trustee's sale, the notice showed that the note had not been accelerated. It unequivocally permitted Ms. Ukpoma to reinstate her loan by paying the delinquent payments, plus late charges, costs, and fees. All subsequent notices showed that the note had not been accelerated. To construe the February 2008 notice as a clear and unequivocal acceleration of the installment note would provide a windfall to Ms. Ukpoma, who never lost her right to reinstate the loan by simply paying the delinquent payments, plus late charges, costs, and fees.

We therefore hold that QLS's February 2008 notice did not accelerate the installment note. And because the note never accelerated, the six-year statute of limitations has not run on all of the installment payments. We conclude that the trial court did not err in granting U.S. Bank's motion for summary judgment.

     C.     THIS AUTHOR BELIEVES THAT INITIATING NONJUDICIAL FORECLOSURE DOES NOT TOLL THE STATUTE OF LIMITATIONS

Because the installment note was never accelerated, we need not address whether commencement of the various nonjudicial foreclosures tolled the statute of limitations. But because the secondary opinion addresses this issue, this author wishes to respond.

This author believes that *Bingham v. Lechner*, 111 Wn. App. 118, 45 P.3d 562 (2002) should be overruled. The *Bingham* court writes, "The trial court found, and the parties agree, that commencement of a nonjudicial foreclosure tolls the statute of limitations." *Id.* at 127. The *Bingham* court never questioned or analyzed this issue. In fact, nothing in the nonjudicial foreclosure statute, RCW 61.24.030, mentions tolling. This is impliedly acknowledged by the secondary opinion's reliance on RCW 4.16.230 instead of RCW 61.24.030.

RCW 4.16.230 provides in relevant part: "When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action." 11 U.S.C. § 362 automatically stays all proceedings against a debtor, including the action here, a judicial foreclosure action. Apart from this, the secondary opinion does not cite any statute that stays a judicial foreclosure action.

RCW 61.24.030(4), cited in the secondary opinion, is certainly not such a statute. RCW 61.24.030 provides in relevant part: "It shall be requisite to a *trustee's sale . . .* (4) [t]hat no action commenced by the beneficiary of the deed of trust is now pending to seek satisfaction of [the secured debt]." (Emphasis added). A trustee's sale is a nonjudicial foreclosure. RCW 61.24.005(17).

8

RCW 61.24.030(4) thus prevents a deed of trust beneficiary from commencing a *nonjudicial* foreclosure if a judicial foreclosure action is pending. It does not operate in reverse—to prevent a deed of trust beneficiary from commencing a *judicial* foreclosure action if a nonjudicial foreclosure is pending. Because RCW 61.24.030(4) did not stay the commencement of this judicial foreclosure action, RCW 4.16.230 did not toll the statute of limitations.

Affirmed.

Lawrence-Berrey, C.J.

I CONCUR:

Korsmo, J.

9

No. 35791-1-III

KORSMO, J. (concurring) — I agree with the lead opinion that the notice of acceleration was ambiguous and that the behavior of the parties demonstrates that the note was never accelerated. I also agree with the concurrence that if the note had been accelerated, the numerous bankruptcy filings and nonjudicial foreclosure proceedings tolled the statute of limitations.

With these observations, I join both opinions.

_____
Korsmo, J.

No. 35791-1-III

SIDDOWAY, J. (concurring in part and dissenting in part) — I agree with the lead opinion that we should affirm the dismissal of Angela Ukpoma's complaint. Because I disagree with the lead opinion's reason for affirming, I write separately.

The notice of default that Quality Loan Service Corporation (QLS), as trustee, sent to Ms. Ukpoma on February 1, 2008, is not ambiguous. It could hardly be more clear, stating, "[T]he beneficiary has elected to accelerate the loan described herein" and "[the beneficiary] has declared the entire principal balance of $252,000.00, plus accrued costs, immediately due and payable." Clerk's Papers (CP) at 307. "NOTWITH-STANDING SAID ACCELERATION" reinforces the fact of acceleration, even if it is followed by an offer of terms on which Ms. Ukpoma could reinstate the loan. *Id.* Ms. Ukpoma never reinstated the loan. The unambiguous acceleration stands.

The lead opinion acknowledges that it finds ambiguity sua sponte. It does so in a matter that was decided on summary judgment. Three declarations were offered in support of summary judgment by U.S. Bank National Association on behalf of the beneficiary mortgage trust[1] (the Trust), and none of the three assert that the Trust did not elect to accelerate the obligation in 2008. For all we know, the reason the Trust later

_____

[1] Specifically, the Adjustable Rate Mortgage Trust 2007-2 Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2007-2.

offered lesser cure amounts was the result of loss mitigation and mediation requirements enacted beginning in 2009.[2]

The Trust argues that it was entitled to summary judgment on different grounds (reason enough not to speculate about ambiguity). It argues first, that the acceleration language in QLS's notice of default was ineffective. Its second argument is that as a result of tolling, its judicial foreclosure action was not time barred when commenced on May 13, 2016.

The first ground is unpersuasive. The Trust does not deny that in 2008 it "elected to accelerate the loan described [in QLS's notice of default]" and "declared the entire principal balance of $252,000.00, plus accrued costs, immediately due and payable," as asserted by QLS's notice. CP at 307. For summary judgment purposes, we assume that it did. But it argues that QLS's notice of default failed to comply with Ms. Ukpoma's

---

[2] Beginning in 2009, the legislature responded to a wave of residential foreclosures with a series of amendments to the "Deeds of Trust Act," chapter 61.24 RCW, that added additional protections and prerequisites to foreclosures of deeds of trust recorded against certain types of "residential real property," which is a defined term in the Act. 2 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS § 21.11(2) at 21-31 (4th ed. 2014). In the case of certain noncommercial loans secured by owner-occupied residential property, the foreclosure process can be delayed by loss mitigation and mediation requirements or by a senior beneficiary's obligation to respond to a short sale offer. *Id.* at § 21.11(3)-(5) at 21-31 to -36.

2

deed of trust in two respects: first, it was issued by QLS, not the Trust;[3] and second, it did not provide Ms. Ukpoma with notice and an opportunity to cure prior to acceleration.

If the Trust elected to accelerate and declare the entire loan balance due without providing the required form of notice, then *the promisee*—Ms. Ukpoma—could elect whether to claim a breach or waive it. *E.g., Colo. Structures, Inc. v. Ins. Co. of W.*, 161 Wn.2d 577, 588-89, 167 P.3d 1125 (2007) (plurality opinion). But the Trust provides no authority that a party can use its own breach as the basis for a defense. As Washington appellate courts frequently say, when an appellant cites no authority in support of a proposition, we may assume that counsel, after diligent search, found none. *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978).

The Trust cites an opinion of this court for the proposition that "[w]hether a lender has elected to accelerate a loan must be determined based on the language of the deed of trust." Resp't's Answering Br. at 6 (citing *4518 S. 256th, LLC, v. Karen L. Gibson, PS*, 195 Wn. App. 423, 441-42, 382 P.3d 1 (2016)). But that is not what the case holds.

In *4518 S. 256th*, unlike this case, the beneficiary declared a default in an effort to collect only past due installments. 195 Wn. App. at 428-29. "Nothing in th[e] notice of default to the borrowers stated that the lender chose to declare the unpaid balance of the

---

[3] While the Trust now argues that only it could issue the notice of default, its complaint seeking judicial foreclosure relied on a notice of default that had been issued by its servicer, whom it averred, "stands in the shoes of the Lender under the Deed of Trust." CP at 94. Its complaint characterized the servicer's notice as "satisf[ying] each of the requirements [for effective notice of acceleration]." *Id.* at 93-94.

3

loan due and payable" and the notice identified the amount required to cure the default as $15,255.56, at a time when the unpaid principal balance of the loan was $255,932.00. *Id.* at 429. Not long thereafter, the original successor trustee under the deed of trust recorded a notice of trustee's sale. *Id.* "Nothing in th[e] notice of trustee's sale to the borrowers stated that the lender chose to declare the unpaid balance of the loan due and payable." *Id.* at 430. The scheduled foreclosure sale never occurred.

When a new successor trustee served a notice of trustee's sale more than six years later, the owners of the encumbered property filed their own suit to restrain the sale and quiet title. *Id.* They argued that collection of the entire obligation, not just the more-than-six-year-old installments, was time barred, because the first notices of default and of trustee's sale operated as an acceleration. Given no hint in those notices that the beneficiary intended to accelerate the loan balance, the property owners tried to rely, instead, on language in the deed of trust. They argued that the court should construe the deed of trust as providing that the beneficiary could only invoke the power of sale by accelerating the loan, so its notice of trustee sale *implicitly* operated as an election to accelerate. *Id.* at 441-42. Their argument was unsuccessful.

Contrary to the Trust's argument, the decision in *4518 S. 256th* does not focus on provisions of the deed of trust; it emphasizes the intention of the beneficiary that is communicated to the borrower following a default: "To accelerate the maturity of a promissory note, '[s]ome affirmative action is required, some action by which the holder

4

of the note makes known to the payors that he intends to declare the whole debt due.' " *Id.* at 435 (alteration in original) (internal quotation marks omitted) (quoting *Glassmaker v. Ricard*, 23 Wn. App. 35, 37, 593 P.2d 179 (1979)). " '[A]cceleration [of the maturity of the debt] must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date.' " *Id.* (alterations in original) (quoting *Glassmaker*, 23 Wn. App. at 38). The Trust cannot rely on its failure to comply with its obligations under the deed of trust to avoid the plain acceleration language in QLS's notice of default.

The second ground for dismissal relied on by the Trust is rejected by the lead opinion but provides a legitimate basis on which to affirm the judgment in the Trust's favor. The Trust demonstrated that when tolling is taken into consideration, the Trust's commencement of its judicial foreclosure action was timely.

During the period after the notice of acceleration was sent and the foreclosure action was commenced, Ms. Ukpoma filed four bankruptcy actions. The automatic stay provided by the bankruptcy code, 11 U.S.C. § 362(a)(3), is a statutory prohibition that tolls the statute of limitations. *Merceri v. Deutsche Bank AG*, 2 Wn. App. 2d 143, 408 P.3d 1140, *review denied*, 190 Wn.2d 1027, 421 P.3d 457 (2018) (applying RCW 4.16.230).

Also during the period before the Trust filed suit, it commenced nonjudicial foreclosure proceedings seven times by serving notices of trustee's sales. By statute, a

5

beneficiary who wishes to foreclose nonjudicially may not rely on the grantor's default to pursue an action seeking satisfaction of an obligation secured by the deed of trust. RCW 61.24.030(4). Generally, it may not obtain a deficiency judgment against a borrower. RCW 61.24.100(1). These provisions are mirrored by a judicial foreclosure provision, RCW 61.12.120, which prohibits concurrent actions. *And see* RCW 61.24.100(2) (providing that before initiating nonjudicial foreclosure and after discontinuing it, other action against a person liable on the secured obligation can be pursued).

The shortest time frame for the nonjudicial foreclosure process, absent any complications or postponements, is 190 days. RCW 61.24.040(12). A trustee may continue the sale for a period or periods not exceeding a total of 120 days. RCW 61.24.040(10). The statute outlining the requisites to a trustee's sale provides that mortgage servicers and beneficiaries may discontinue any foreclosure action initiated under the "Deeds of Trust Act," chapter 61.24 RCW, in favor of other allowed methods for pursuit of foreclosure of the security interest or deed of trust security interest. RCW 61.24.030(12).

In *Bingham v. Lechner*, 111 Wn. App. 118, 131, 45 P.3d 562 (2002), this court affirmed the trial court's determination that the institution of a nonjudicial foreclosure proceeding tolls the statute of limitations to the date scheduled for foreclosure or, given the trustee's right to continue the sale for a period or periods not exceeding 120 days, to the date 120 days thereafter. While the author of the lead opinion in this case declines to

6

follow *Bingham*, I find the decision consistent with RCW 4.16.230, which provides for tolling "[w]hen the commencement of an action is stayed by . . . statutory prohibition."

The Deeds of Trust Act "furthers three basic objectives: an efficient and inexpensive nonjudicial foreclosure process, adequate opportunity to prevent wrongful foreclosure, and promotion of the stability of land titles." *Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, No. 76812-3-I, slip op. at 11 (Wash. Ct. App. Feb. 5, 2019), https://www.courts.wa.gov/opinions/pdf/768123.pdf (citing *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Given the Act's protections for borrowers, the nonjudicial foreclosure procedure is time consuming. A beneficiary who is pursuing nonjudicial foreclosure is taking action. Because the beneficiary is prohibited by RCW 61.24.030(4) from suing on its note while it is taking nonjudicial foreclosure action, RCW 4.16.230 applies.[4] I would affirm the trial court on that basis.

Siddoway, J.

I CONCUR:

Korsmo, J

---

[4] Ms. Ukpoma does not challenge the Trust's demonstration that when tolling for the bankruptcy and nonjudicial foreclosure proceedings are taken into effect, the action below was not time barred.

7